No. 46,988

VICKY BUIE, *Appellee*, v. JUDITH BIRTELL, *Appellant*.

(516 P. 2d 963)

Opinion
filed December 8, 1973.

*Jack L. Lively*, of Becker, Hildreth and Lively, of Coffeyville, argued the cause, and *Morris D. Hildreth*, of the same firm, was on the brief for the appellant.

*Alvin F. Grauerholz*, of Coffeyville, argued the cause for the appellee.

*Per Curiam:* In this action for the wrongful death of a nine year old boy a brief summary of the facts is as follows:

On July 25, 1969, Tony King, the deceased, suffered serious injuries, particularly to his head, as the result of a collision in Coffeyville with a car driven by the boy's mother, who is the plaintiff in this action. The boy was unconscious from the time of his injury to the time of his death three days later on July 28. He was first taken to the Coffeyville Memorial Hospital, and after an examination there by Dr. Alcox, was placed in an ambulance for transfer to the Medical Center of the University of Kansas, at Kansas City, for possible surgery to relieve the pressure on his brain.

En route to the Medical Center the ambulance was involved in a collision with defendant's vehicle on interstate highway 35 near Merriam, Kansas. Shortly after midnight of July 25, and after some delay, the boy was transferred to a "rescue" vehicle and the journey was resumed to the medical center where he was admitted the early morning of July 26.

The injured boy, while in the ambulance, was wearing an inflatable collar which held in place an "endotrachial tube" inserted into his lungs to make his breathing less difficult. As a result of the accident the tube was pulled out, and he received mouth to mouth respiration for 7 to 10 minutes, after which the tube was replaced before going on to the hospital. No additional injuries are indicated as the result of the ambulance collision.

Two days later on July 28, at 5:40 p. m., the injured boy died. The final diagnosis was "cerebral contusion, hypotension, renal failure, staphylococcal pneumonia, cardiovascular collapse."

The record discloses that it was the pneumonia which caused the boy to die when he did. Trial on a petition charging wrongful death from negligence on the part of the defendant, driver of the other vehicle involved in the collision with the ambulance, resulted in a verdict for the plaintiff with a judgment for $4,000.

The first and crucial question for review is whether there is evidence that the death from pneumonia was proximately connected with the ambulance collision on interstate highway 35.

That question is clearly beyond the ken of the jurors without expert assistance. An examination of the record reveals no expert testimony to support a reasonable inference of causal connection to a reasonable medical probability. And there is no evidence of circumstances or lay testimony to aid the jury in filling the gaps left by the medical testimony. In short, there is no basis for the jury's verdict other than speculation.

The plaintiff, through Dr. Alcox, attempted to eliminate the Coffeyville hospital as a source of staphylococcic infection. But the doctor's testimony on this point is ambiguous as appears from the record:

"Q. Doctor, can you say with any medical certainty that the staphylococcal infection that involved this young man's lungs came from the Coffeyville Memorial Hospital?

"A. I think, yes, in view of the fact that we have in the meantime patients all over the hospital, not only in the emergency room, x-ray department, wards, surgery and everywhere else we have yet to have it shown by follow-up of the patient subsequent infection or known infection that any have occurred as a result of procedures performed in any of those places."

It must be assumed that Dr. Alcox went as far in his testimony as he was willing to go. If he had been willing to testify that there was a reasonable medical probability that the pneumonia was acquired as the result of what happened on the way to the medical center we may assume that he would have been asked about it by plaintiff's experienced attorney, and would have so testified.

Considering the nature of the disease and the doctor's own testimony that staphylococci are found "Almost anywhere, beneath the normal finger nails, on floors, walls, in the air," the lack of opinion testimony pinning the introduction of the infection to some particular time or site is not remarkable.

The history of this case covers a period of only three days. The pneumonia bacteria may have been in the boy's system before his injury, or may have been encountered at the time of his injury, en

route to the medical center (before, at the time of, or after the collision), at the medical center itself, or even in the hospital at Coffeyville. One alternative is almost as good as another. It is a matter of possibilities, not probabilities. At least the conclusion that the infection was picked up as the result of events on interstate highway 35 falls far short of reasonable medical probability, so far as this record demonstrates.

One other aspect of the case calls for attention. Did the events incident to the ambulance collision render the deceased less able to cope with pneumonia so as to justify a reasonable inference that his death would not have resulted except for such events?

While the doctor testified to the relationship between brain damage, oxygen inadequacy and anoxia ("a decrease in oxygen saturation of tissues"), it is left wholly to conjecture whether there was a probability that death resulted from or was contributed to by the second accident. Here again the doctor is silent. A jury could hardly be expected to make a finding of causal connection in this field of expertise which would stand the test of reasonableness, if the doctor himself had no opinion on the subject. None was expressed.

Having disposed of the case on the ground indicated in this opinion it is unnecessary to reach appellant's other claims of error. For the reasons herein stated the judgment of the court below is reversed with directions to enter judgment for the defendant.